UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

JOSE M. TORRES,

    Plaintiff,

  -against-

CITY OF NEW YORK, CAPTAIN JOHNSON,
OFFICER LEWIS, and OFFICER DURITY,

    Defendants.

------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2019

MEMORANDUM DECISION
AND ORDER

17 Civ. 6604 (GBD) (DCF)

GEORGE B. DANIELS, United States District Judge:

*Pro se* Plaintiff Jose M. Torres brings this action under 42 U.S.C. § 1983 against Defendants Captain Timothy Johnson, Officer Dave Durity, Officer Junior Lewis (collectively, the "Officer Defendants"), and the City of New York, alleging that Defendants violated his constitutional rights by subjecting him to a body cavity search while he was in custody at the Anna M. Kross Center (the "AMKC") on Rikers Island. (Compl., ECF No. 2.) Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking to dismiss all of Plaintiff's claims. (Notice of Mot., ECF No. 38.)

Before this Court is Magistrate Judge Debra C. Freeman's August 14, 2019 Report and Recommendation (the "Report"), recommending that Defendants' motion for summary judgment be granted.[1] (Report, ECF No. 55, at 1, 34.) Magistrate Judge Freeman advised the parties that, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 34.) No

---

[1] The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

objections have been filed.[2] Having reviewed the Report for clear error and finding none, this court ADOPTS the Report's recommendation to dismiss the complaint.

## I. FACTUAL BACKGROUND

### A. Balloons of Contraband.

On February 25, 2016, Plaintiff began serving a two-to-four-year prison sentence. (Defs.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs. 56.1 Stmt."), ECF No. 40, ¶¶ 1–2.) On the evening of February 24, 2016, prior to reporting to the AMKC on Rikers Island, Plaintiff swallowed 10 to 12 balloons containing various types of contraband. (*Id.* ¶¶ 3–4, 7.) The balloons exited Plaintiff's system over the following three days. (*Id.* ¶ 6.)

### B. First Search on March 1, 2016.

On March 1, 2016, Plaintiff was incarcerated in the Dorm 4 Main housing area ("Dorm 4") of the AMKC. (*Id.* ¶ 9.) On that day, Plaintiff had a balloon containing K2[3] inserted into his rectum, K2 rolled up into a piece of paper concealed in the groin area of his pants, as well as money and matches stuffed in the waistband of his underwear. (*Id.* ¶¶ 11–12.) When a security team at the AMKC—which included the Officer Defendants—entered Dorm 4 in order to conduct a search, Plaintiff reached toward the front of his pants to determine whether the K2 hidden in his groin area had fallen out. (*Id.* ¶¶ 13–15.) Defendants Johnson and Lewis observed Plaintiff's motion and subsequently instructed Plaintiff to go to the bathroom of Dorm 4 so that he could be strip searched. (*Id.* ¶¶ 16–17.)

---

[2] On September 10, 2019, Plaintiff requested an extension of time to file objections to the Report. (Pl.'s Letter dated Aug. 18, 2019, ECF No. 56.) On September 13, 2019, this Court granted an extension to September 23, 2019. (Order, ECF No. 57.) Plaintiff has filed no formal objections to the Report.

[3] K2 is an informal name for a synthetic form of marijuana.

During the strip search, Lewis recovered from Plaintiff's clothing K2, matches, and money, and further instructed Plaintiff to squat. (*Id.* ¶¶ 18–19.) Plaintiff complied, and Lewis observed an object protruding from Plaintiff's anus. (*Id.* ¶ 20.) Subsequently, an unidentified officer[4] touched Plaintiff's buttocks for a few seconds, which prompted Plaintiff to jump up and turn around. (*Id.* ¶¶ 22–23.) At that time, another unidentified officer[5] brought Plaintiff to the ground through a chokehold.[6] (*Id.* ¶ 24.) In addition, Plaintiff testified that in order to prevent the officers from touching his buttocks, he began to resist them and tried to push himself away from them by "tussling" his body. (Millar Decl., Ex. B (July 24, 2018 Tr. of Dep. of Jose M. Torres), at 101:12–18, 105:5–106:14.) Plaintiff did not suffer any injuries as a result of the search. (Defs. 56.1 Stmt. ¶ 32.)

### C. Second Search on March 1, 2016.

Shortly thereafter, Johnson and Lewis escorted Plaintiff to another room in Dorm 4 where only the three of them were present. (*Id.* ¶¶ 33–34.) Johnson and Lewis then instructed Plaintiff to surrender the contraband that was still in his rectum. (*Id.* ¶¶ 35–36.) After Plaintiff repeatedly denied having the contraband and repeatedly refused to comply with the officers' orders, Lewis removed Plaintiff's handcuffs and instructed him to remove his clothing, bend over, and squat.

---

[4] Plaintiff testified at his deposition that he initially did not know which or how many officers touched his buttocks, but that another inmate informed him that Johnson was the officer who had done so. (Millar Decl., Ex. B (July 24, 2018 Tr. of Dep. of Jose M. Torres), at 106:15–21, 107:4–13.)

[5] Plaintiff initially testified that he was unsure whether Lewis or another officer had brought him down to the floor through a chokehold, but he later testified, "Lewis was the one that yoked me up." (Millar Decl., Ex. B (July 24, 2018 Tr. of Dep. of Jose M. Torres), at 102:17–20, 110:25–111:2.)

[6] Lastly, Plaintiff initially testified that Durity "did not intervene," "did not stop [anything]," and "just watched what happened," but he later testified that he "would assume" Durity was the officer who had *also* pinned him down on the floor through a chokehold at some point because "he was the only one close to [Plaintiff]" at the time. (Millar Decl., Ex. B (July 24, 2018 Tr. of Dep. of Jose M. Torres), at 110:18–25, 111:4–112:2.)

(Millar Decl., Ex. B (July 24, 2018 Tr. of Dep. of Jose M. Torres), at 121:10–125:6.) Plaintiff testified at his deposition that when he bent over and spread his butt cheeks, Lewis touched his butt cheeks for "[a]bout three, four seconds" and "tried to reach" for his anus. (*Id.* at 125:1–13, 126:22–127:2.) Plaintiff testified that he then jumped up and turned around, which then led Lewis to pin Plaintiff down on the ground through a chokehold. (*Id.* at 125:14–17, 127:1–8.) While on the ground, Plaintiff began kicking Lewis several times. (*Id.* at 128:5–6.) Plaintiff further testified that Johnson "laid [Plaintiff] down on [his] shoulders," forcing him to lie on his back, and that Lewis then spread Plaintiff's legs apart, stuck his hand in Plaintiff's anus, and removed a balloon containing K2. (*Id.* at 125:18–25, 127:9–128:10.)

### D. Plaintiff's Injury and Medical Treatment.

On March 3, 2016, Plaintiff went to the AMKC medical clinic and complained of pain in his rectum in connection with the removal of contraband. (Defs. 56.1 Stmt. ¶ 48; *see* Millar Decl., Ex. C (Medical Records), ECF No. 41-3, at D00049–51.) According to the medical record, upon examination, Plaintiff was diagnosed with a "small pinkish mass outside his anus" with no bleeding. (Millar Decl., Ex. C (Medical Records), at D00050; *see* Millar Decl., Ex. D (Injury to Inmate Report dated Mar. 3, 2016), ECF No. 41-4, at D00019.) On the same day, Plaintiff went to the AMKC medical clinic for a second time, complaining of the same pain. (Millar Decl., Ex. C (Medical Records), at D00185.) Plaintiff's medical record from the second examination reflects that he had "hemorrhagic mass in the rectum" with his rectum being "tender to palpation" without any evidence of bleeding. (*Id.* at D00186.)

On March 3, 2016, Plaintiff also saw a psychologist. (*Id.* at D00315–19.) According to the medical record, Plaintiff felt "traumatized" by the second search, but "in no way views this as a sexual assault." (*Id.* at D00318.)

4

## II. LEGAL STANDARDS

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). Portions of a magistrate judge's report to which no or "merely perfunctory" objections have been made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations and internal quotation marks omitted). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation and internal quotation marks omitted).

### B. Rule 56 Motion for Summary Judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts,"

*id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)) (internal quotation marks omitted). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation and internal quotation marks omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286 (citation omitted).

### C. *Pro Se* Plaintiffs.

Submissions of *pro se* litigants are read liberally and interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted). The Second Circuit has held that "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citation omitted).

## III. SUMMARY JUDGMENT IS GRANTED

### A. Plaintiff Cannot Prevail on His Eighth Amendment Claims Against the Officer Defendants.

The Report construes Plaintiff's complaint as asserting an excessive force claim under the Eighth Amendment against each of the Officer Defendants for their use of chokeholds and the removal of contraband from Plaintiff's rectum. (Report at 10–12.) The Report also construes Plaintiff's complaint as asserting a sexual assault claim under the Eighth Amendment against each of the Officer Defendants stemming from the extraction of the contraband. (*Id.*)

Magistrate Judge Freeman appropriately found that Plaintiff's Eighth Amendment claims cannot survive summary judgment given that the evidence in the record shows that Plaintiff's injury was *de minimis* and that the Officer Defendants' use of chokeholds and removal of the contraband were not sufficiently egregious. (*Id.* at 12–21.) An official's use of force violates the Eighth Amendment when both objective and subjective requirements are met: (1) the use of force must be "objectively, sufficiently serious[,]" and (2) subjectively, the official must have a "sufficiently culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citation and internal quotation marks omitted). Additionally, the Eighth Amendment does not reach "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (citation omitted). Finally, in the Second Circuit, it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

First, Magistrate Judge Freeman correctly determined that Defendants' use of force on Plaintiff was not sufficiently harmful to satisfy the objective component of Plaintiff's excessive force claim. As reflected in his medical records from his visits to the AMKC medical clinic and

7

his deposition testimony, there is no evidence or claim of an injury stemming from the alleged use of chokeholds. (Report at 15.) Therefore, Magistrate Judge Freeman correctly determined that Defendants are entitled to summary judgment on this claim.

Second, Magistrate Judge Freeman properly found that the removal of contraband from Plaintiff's rectum did not constitute use of excessive force in violation of his Eighth Amendment rights because "the evidence in the record demonstrates that any physical injury to Plaintiff caused by the removal of contraband was *de minimis*, and thus insufficient to satisfy the objective prong of the applicable standard." (*Id.*) Thus, Magistrate Judge Freeman properly found that summary judgment is warranted on this claim as well.

With respect to the sexual assault claim, Magistrate Judge Freeman correctly found that the undisputed facts fail to establish that Lewis committed sexual assault by forcibly removing contraband from Plaintiff's rectum. A prison officer "looking for contraband may subject inmates to reasonable strip searches and cavity searches" because "prison security and safety may require frequent searches of an intensely personal nature." *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 560 (1979)). In determining whether a prison official has violated an inmate's Eighth Amendment rights by engaging in sexual assault in the course of a search, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 257–58. Here, as Magistrate Judge Freeman correctly noted, Lewis's removal of contraband "was based on a reasonable belief that Plaintiff had secreted contraband in a body cavity." (Report at 20.)

In addition, there exists no evidence in the record that the Officer Defendants derived sexual gratification from the removal of the contraband from Plaintiff's rectum or that they

8

engaged in such conduct in order to "humiliate" Plaintiff. *Crawford*, 796 F.3d at 257–58. Magistrate Judge Freeman appropriately determined that "Plaintiff does not allege that the Officer Defendants said anything of a sexual nature during the course of the search, or exhibited any conduct that could reflect that Lewis, or Johnson for that matter, undertook the cavity search for purposes of sexual gratification or humiliation." (Report at 20–21 (quotation marks omitted).) Therefore, Magistrate Judge Freeman properly found that dismissal of this claim is warranted.

Lastly, Magistrate Judge Freeman appropriately found that Plaintiff's claims against Johnson and Durity for not intervening to prevent Lewis's actions should be dismissed, given that Plaintiff cannot prevail on his excessive force or sexual assault claims. *Coleman v. City of New York*, No. 07 Civ. 1051 (CM), 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010). Therefore, Plaintiff's Eighth Amendment claims against the Officer Defendants are dismissed.

## B. Plaintiff Cannot Prevail on His Fourth Amendment Claim Against the Officer Defendants.

The Report construes Plaintiff's complaint as asserting claims against each of the Officer Defendants for violating Plaintiff's Fourth Amendment rights by subjecting Plaintiff to a body cavity search during which contraband was removed from his rectum. (Report at 10–12.) Magistrate Judge Freeman correctly held that "this Court cannot find that the Officer Defendants would have reasonably understood that their actions may have been unlawful, and thus concludes that they are entitled to qualified immunity for their actions." (*Id.* at 21–22.)

The Second Circuit has held that "inmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (reaffirming *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992) (noting that "maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy")). Courts must undertake a two-part inquiry when evaluating an inmate's claim that officers infringed

his or her right to bodily privacy: (1) whether the inmate has "exhibit[ed] an actual, subjective expectation of bodily privacy[,]" and (2) "whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights." *Covino*, 967 F.2d at 77–78. Further, "if the inmate's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Harris*, 818 F.3d at 58 (citation omitted). The *Bell* four-factor test of reasonableness requires balancing the need for the search at issue against the invasion of personal rights associated with the search. *See Bell*, 441 U.S. at 559. Specifically, courts must consider (1) the scope of the intrusion, (2) the manner in which the search was conducted, (3) the justification for commencing the search, and (4) the place in which the search was conducted. *See id.*

As Magistrate Judge Freeman appropriately found, such a determination requires this Court to assess "whether there is also evidence that could support a jury determination that Plaintiff's body-cavity search was . . . an 'unreasonable' intrusion on his rights, under the four-factor test articulated in *Bell*." (Report at 25.) Magistrate Judge Freeman properly assessed each of the four *Bell* factors and correctly determined that the last two factors—the officer's justification for the search and the place in which the search was conducted—weigh in favor of a finding that the search was, in fact, reasonable. (*Id.* at 25–29.) The record establishes that the Officer Defendants had a "legitimate penelogical reason" for conducting a body cavity search based on their observations of Plaintiff's conduct, and the fact that the body cavity search was conducted in an isolated part of a cell block where only Lewis and Johnson were present. (*Id.*)

Finally, Magistrate Judge Freeman correctly found that the Officer Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment claim. Qualified immunity is an affirmative defense, "shield[ing] federal and state officials from money damages unless a plaintiff

10

pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation and internal quotation marks omitted). Indeed, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citation and internal quotation marks omitted).

Magistrate Judge Freeman appropriately determined that "this Court is constrained to agree with Defendants that, at the time of the conduct at issue, Plaintiff's right to be free from the type of search that was conducted was not sufficiently established to enable him to proceed against the Officer Defendants, even if the Court were to determine that the *Bell* factors, on balance, weigh in Plaintiff's favor." (Report at 30–31.) Accordingly, this Court adopts Magistrate Judge Freeman's recommendation that the Officer Defendants be granted summary judgment on Plaintiff's Fourth Amendment claims.

### C. Plaintiff Cannot Prevail on His First and Fourteenth Amendment Retaliation Claims.

Magistrate Judge Freeman appropriately determined that Plaintiff does not have a colorable First or Fourteenth Amendment claim for retaliation. To state a claim under § 1983 for retaliation under the First Amendment, a plaintiff must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Magistrate Judge Freeman correctly determined that "Plaintiff has not alleged, for example, that Defendants in any way burdened his right to raise a complaint about the conduct of the body-cavity search or retaliated against him for doing so." (Report at 10 n.5.) Accordingly, Plaintiff's First Amendment claim against Defendants cannot prevail.

### D. Plaintiff Cannot Prevail on His *Monell* Claim Against the City.

Magistrate Judge Freeman correctly found that Plaintiff cannot prevail on his claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), whether his claim is premised on the alleged violation of Plaintiff's Eighth Amendment or Fourth Amendment rights. In order to hold a municipality liable under § 1983, a plaintiff must establish "(1) the existence of an officially-adopted policy, custom, or practice and (2) a direct and deliberate causal connection between that policy, custom, or practice and the violation of plaintiff's federally-protected rights." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citations and internal quotation marks omitted). Further, "[a] decision not to train certain employees about their legal duty to avoid violating citizens' rights" counts as an officially adopted policy in so far as "[a] pattern of similar constitutional violations by untrained employees" can be demonstrated. *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (citations omitted).

Magistrate Judge Freeman properly rejected Plaintiff's claims against the City because Plaintiff provides insufficient evidence of a "pattern of similar constitutional violations." (Report at 34 (quoting *Connick*, 563 U.S. at 61).) As Magistrate Judge Freeman correctly noted, "Plaintiff alleges that the City's 'failure to train, supervise, and discipline its employee[s] in the appropriate use of physical force [and] executing searches' led to the violation of his constitutional rights and that this failure amounted to 'deliberate indifference.'" (*Id.* at 32–33 (citation omitted).)

12

Magistrate Judge Freeman properly rejected this argument since there is no evidence that Lewis or any other officers used an unconstitutional level of force at the time of this incident or on any previous occasions. Evidence of a policy or practice by the City is lacking. (*Id.* at 33–34.) Consequently, Magistrate Judge Freeman properly found that "the City is entitled to summary judgment dismissing Plaintiff's *Monell* claim." (*Id.* at 34.)

## IV. CONCLUSION

Magistrate Judge Freeman's Report is ADOPTED. Defendants' motion for summary judgment, (ECF No. 38), is GRANTED. The Clerk of Court is directed to close the motion accordingly, and to mail a copy of this memorandum decision and order to Plaintiff at Greene Correctional Facility, P.O. Box 975, Coxsackie, New York 12051.

Dated: New York, New York
September 30, 2019

SO ORDERED.

GEORGE B. DANIELS
United States District Judge